Harry A. Howard, Sr., Administrator of the Estate of Harry A. Howard, Jr., Deceased, Appellee, v. City of Rockford, Appellant.

Gen. No. 8,593.

Opinion filed February 23, 1933.
Rehearing denied May 2, 1933.

WILBUR E. JOHNSON and DAVID D. MADDEN, for appellant.

FRANK E. MAYNARD, for appellee.

MR. PRESIDING JUSTICE WOLFE delivered the opinion of the court.

Harry A. Howard, administrator of the estate of Harry A. Howard, Jr., deceased, started suit in the circuit court of Winnebago county against the City of Rockford to recover damages by reason of the death

of the plaintiff's intestate, a boy seven years of age, which occurred on September 23, 1929.

An amended declaration of the appellee was filed February 27, 1932, which averred that the City of Rockford is the owner of certain described premises in the City of Rockford lying between Horseman street and Kilburn avenue; that the same has been used as a stone quarry for many years, leaving a deep hole on the premises; that this quarry is filled with water from underground springs and surface water and underground streams, the pool being more than a half of a city block in diameter and from 10 to 25 feet deep over a greater portion of the land; that this pool of water is close by and adjacent to Kilburn avenue and Horseman street; that about and around said pool were dwelling houses and from such dwelling houses the pool can be plainly seen; that quarrying is carried on and blasting of the stone is carried on causing loud noises, all of which is attractive to children; that there has been built on the property a small pump house which stands out and over the water where the water is very deep, and attached to this pump house is a plank walk over the water, and so existed at the time of the drowning of the plaintiff's intestate; that the edge of the pool is of stone with steep banks and that boys of tender age used the banks of the pool and the walk around this pump house in playing; that it was an attractive place for children to stand and throw sticks and stones in the water and to watch the shadows upon the water, and to play with sticks and poles upon the water and fish logs and boards out of the water, and that older boys used the plank walk for diving off of while in swimming.

The declaration further alleges that the plaintiff's intestate had on several occasions played in and about the stone quarry, and prior to the day of his death had been attracted to the pump house, plank walk

blasting, etc. That on September 23, 1929, the plaintiff's intestate, aged about seven years and one month, was attracted to the pump house and quarry; that the City of Rockford knew that children, especially the plaintiff's intestate, had been playing around the pump house on the plank walk; that children on previous occasions had fallen into the water and police had been called to assist in rescuing them; that the City of Rockford knew of the hazardous condition of the pool as a place for children to play; that it was the duty of the City of Rockford to protect and guard the pump house, pool and equipment by providing the place with a watchman; that the City of Rockford failed to provide any adequate fence or protection to keep small children out of the quarry, or out of the pump house and from the platform, but on the contrary allowed the children in the neighborhood to play in the pump house, and use the pond to swim in, float rafts, and to play in and about the pump house and upon the plank walk; that the plaintiff's intestate on the day of his death was attracted to the pump house by a desire to play in the pump house, upon the walk, and to fish in and upon the pond; that while so playing the plaintiff's intestate fell into the water and was drowned.

To this amended declaration the City of Rockford pleaded the general issue and a special plea to the effect that the appellee ought not to maintain said action against the defendant for the reason that the amended declaration to which the plea was filed was filed more than one year after the death of the intestate. The plaintiff filed a demurrer to this special plea of the appellant which was sustained. The issues were submitted to the jury for trial, which found in favor of the plaintiff and assessed his damages at $3,000. Judgment was rendered on the same and the case was brought to this court on appeal.

The record shows that this body of water in question was created by and upon the property of the City

of Rockford, the appellant, by a rock quarry extending below the water level, causing a pit to be filled with water. The body of water so created covered about a half a block in area on appellant's property. This pool was surrounded on three sides by dwelling houses where many small children lived. It was in the dwelling house portion of the corporate City of Rockford. The pool was in no way guarded or fenced so as to be inaccessible to, or to keep small children of the age of the plaintiff's intestate from freely and easily going upon the property. There was no fence on two sides of the property. The evidence clearly establishes that the appellants through its officers had for many years known that small children from the age of four years to eight years and upwards repeatedly went upon this property, attracted there by the quarry, pool, and boards upon the water, buildings and other attractions alluring to their childish curiosity, and as a place to play. Police officers had been sent there by the city on numerous occasions at the request of citizens to guard the property or watch the children playing there, and rescue them from danger, but no one was employed regularly to protect the children from drowning. Among other things that attracted children to this place was a small building built upon the appellant's property on the very edge of an abrupt ledge of rock adjoining the pool which had a temporary scaffold or platform on the west side of the same and extended out over the water of the quarry pool where the water was from 20 to 30 feet deep. This scaffolding or platform was easily accessible to children of the age of the intestate as one could step upon the scaffold or platform from the ground; and upon the scaffold or platform small children were accustomed to play and fish with sticks in the water below.

This case was brought upon the theory of what is commonly called "attractive nuisances" or "turntable" cases. Under the issues as joined it became a

question of fact for the jury to decide whether the proofs sustained the allegations of the declaration and whether the City of Rockford was negligent in maintaining an attractive nuisance on its property. *Stedwell v. City of Chicago,* 297 Ill. 486; *Wolczek v. Public Service Co.,* 342 Ill. 482, 489.

There is little, if any, dispute in regard to the conditions that existed around the old quarry. The plaintiff in his declaration charges matters in his declaration that have not been proven, but it is not necessary that everything charged in the declaration be proven. If there is enough proof to support the allegations in the declaration so the jury can say that the City of Rockford maintained an attractive nuisance dangerous to children of the age of the intestate, then the verdict should stand.

From an examination of the record it is clearly established that the pump house was built on the edge of this pool, and that there was a walk or platform on the west side of it, and that this platform extended out over the edge of the water; that children had been accustomed to play on this platform and the City of Rockford had knowledge of this fact; and that Harry A. Howard, Jr., was attracted to this place, and that while upon the platform fell into the pool and was drowned. The question then arises: Do such facts create what is commonly called an "attractive nuisance?" In the *Wolczek* case *(supra)* our Supreme Court in discussing this rule of law, say: "The rule recognized in this State as to implied invitation is, that where the owner of the premises maintain a dangerous condition or thing of such a character that he may reasonably anticipate that children, who by reason of tender years are incapable of exercising proper care for their own safety, are likely, because of their childish instincts, to be attracted to the dangerous thing and thereby exposed to dangers, he is required to use reasonable care to protect them from injury,

provided it is shown that such dangerous condition or thing is so located as to attract children from the street, playground or place where they have a right to be. Where such an agency is so located it constitutes an implied invitation to such children to come upon the premises and they are not, in law, considered trespassers. The rule does not apply where the owner maintains something for his own use which, though dangerous, would be found by such children only by going upon the premises as trespassers. In other words, to impliedly invite children onto the premises it is necessary that the dangerous agency, with its alluring and attractive character, be so placed as to attract the children there. . . . If there is such an implied invitation to go upon the premises the child is not considered, in law, a trespasser but an implied invitee. Stated in other language, if the owner maintains an agency of such a character and in such a place that he, by reason of his knowledge of those facts and the facts of knowledge common to all concerning the habits of children, naturally and reasonable knows, or should know or anticipate, that children will probably be attracted onto the premises by that agency and will probably come upon his premises unless he warns them not to do so, such facts bring the case within the rule adopted in this and other States and constitute an implied invitation to children to do the thing which he should reasonably anticipate they are likely to do. Under these circumstances the owner is required to use reasonable care to avoid injury to such children. That duty arises out of the invitation which the law implies and rests upon sound and just reason. Facts pertaining to the thing and its location from which such an invitation is to be implied are to be proved as other facts are proved.''

The case of the *City of Pekin v. McMahon,* 154 Ill. 141, is a case very similar to this case. In the *Pekin* case the city had dug gravel on their premises and left

a large pit which had filled with water to a depth of 14 feet; that the banks of the pit were steep and that children were attracted to this pool by the water; that the young boys had been in the habit of playing upon the banks, and the logs, etc., in the water in the pit; that the young boy had fallen into the water and was drowned; that the father of the boy was a laboring man and had gone to his work early in the morning and that the mother had been busy working around her home doing her household duties. In principle we can see no difference between the case before us and the *Pekin* case. In the *Pekin* case the boy was playing upon a log in the water; in the present case the boy was playing upon a board above the water and fell off into the water and was drowned; and it is our opinion that the appellee has proven such a case that comes within the rule of the attractive nuisance, or turntable cases.

We have examined all the cases cited by the appellant in its brief, but we find none of these cases that, in our opinion, comes so nearly to the facts in this case as the *Pekin* case. The appellant insists that the trial court erred in admitting evidence relative to the fence and gate around the pool in question. We do not find anything that would be prejudicial to the appellant in this testimony. In the case of *City of Pekin v. McMahon, supra,* the same question was raised on practically and technically the same facts as in this case, and the court there held that it was a question of fact for the jury to decide whether the parents of the intestate had been guilty of contributory negligence in allowing the child to go upon the premises on which he was drowned. The jury were properly instructed in regard to this matter and have found that the parents were not guilty of contributory negligence. We think their verdict should not be disturbed on account of their so finding.

The appellant complains of appellee's given instruction No. 7, which relates to the measure of damages that the jury shall assess in case they find in favor of the plaintiff. This instruction is subject to criticism, but it is not a peremptory instruction. Any error the court may have committed in giving this instruction is overcome by defendant's given instruction No. 11, which states the elements that can be taken into consideration and excludes all other matters not to be considered by the jury. The instructions of the court should be considered as a series and not as any particularly isolated instruction when it does not direct a verdict.

We find no reversible error in this case and the judgment of the circuit court of Winnebago county is hereby affirmed.

*Judgment affirmed.*