Nancy Sue Jones, a Minor, by Vincent Paul Jones, Her Father and Next Friend, Plaintiffs-Appellants, v. Margaret Schmidt, Defendant-Appellee.

Term No. 52–O–4.

Opinion filed January 30, 1953.
Released for publication March 4, 1953.

WISEMAN & CHAPMAN, of Alton, for appellants.

JAMES L. REED, of Edwardsville, for appellee.

MR. JUSTICE SCHEINEMAN delivered the opinion of the court.

The plaintiff, Nancy Sue Jones, brought this suit by her father as next friend, for damages as a result of injuries incurred when she was struck by an automobile driven by the defendant, Margaret Schmidt.

By a second count in the complaint, plaintiff, Vincent Paul Jones, claimed damages for medical expenses, which he had been obliged to pay as a result of the injuries incurred by his minor daughter.

A jury returned a verdict finding the defendant not guilty as to the claim of the infant plaintiff, and the same jury returned a verdict finding the issues in favor of the other plaintiff, and assessed damages on this claim in the sum of $1,000. The trial court denied all motions made by the infant plaintiff, after verdict. At the same time, the court allowed defendant's motion for judgment notwithstanding the verdict, which had been returned in favor of Mr. Jones, and entered judg-

ment in bar as to both claims. The court's order provided that, if the judgment were reversed as to Mr. Jones, he should have a new trial.

Nancy Jones was aged five years at the time and was attending kindergarten. She was then residing with her grandmother, and Mrs. Schmidt lived next door. Between the houses there was a yard, and a driveway alongside defendant's house, leading from the street back to a garage at the rear.

On the morning in question, defendant backed her car out of the garage and stopped at her doorway to pick up her small daughter and take her to school, because it was raining. The two children attended the same school. Defendant saw Nancy on her back porch ready to go to school, so she invited her to ride.

The terms of the invitation are in dispute. Defendant testified that there were puddles of water in the yard, and that she called to Nancy and told her not to cross the yard as she would get her feet wet, but to go through the house, and she would be picked up at the front sidewalk. She says Nancy nodded her head.

Defendant then got into the car, her daughter being already in it. She started to back up, leaning out to look to the rear, so that her head was toward her own house, on the side away from Nancy's. She heard a noise and stopped at once. Nancy had disregarded the alleged instructions, had crossed the yard and apparently reached for the rear door as the car was moving, and she was crushed against a tree at the side of the drive, receiving injuries. Medical expenses were over $500.

Nancy was aged nine at the time of the trial and testified in her own behalf. She seemed to be intelligent for her age. She testified that, after Mrs. Schmidt invited her to ride, Mrs. Schmidt did not say where to go. However, at another time, in response to a question by her own counsel, she answered that she did hear de-

338

fendant say "You go through the house and meet me out on the sidewalk in front of your grandmother's house." She denied nodding her head, but on cross-examination she said she could not remember about that, from four years ago.

The grandmother testified that her hearing was good, that she was in position to hear what defendant told Nancy, and did not hear any directions to go through the house. She also said that defendant carried Nancy in after the accident, saying "I hit her and it was my fault." Defendant denied this.

There was much other evidence, including reference to prior relations of the parties, Nancy's conduct and obedience, and other items bearing upon the situation. However, the recited testimony bears upon the principal question argued in the briefs, which is the question of a child's status.

■ The general rule is that a property owner owes no duty of due care to a trespasser, or to a licensee, and that an invitee loses that superior status by departing from the place to which the invitation applied. Plaintiffs contend this rule does not apply to children, and cite the case of *Farmer v. Alton Building & Loan Ass'n,* 294 Ill. App. 206. This may be a rule sometimes applied under the attractive nuisance theory, which is a departure from the usual logic of the common law. Since that theory is not involved in the facts of this case, we are of the opinion the weight of authority is contrary to plaintiffs' contentions.

■ As stated in *Burns v. City of Chicago,* 338 Ill. 89, 98, it is not the law that the duty of protecting children is charged to every member of the community except the parents.

■ "The general rule is that no different or higher duty exists with respect to an infant trespasser than would exist in the case of an adult trespasser, so that ordinarily there is no duty toward an infant trespasser

339

except to refrain from wilful or wanton injury.'' 65
C. J. S. Negligence, sec. 27. A similar statement pertains to infant licensees. Id. sec. 39. This view prevails in Illinois. *Burns v. City of Chicago,* 338 Ill. 89; *Peers v. Pierre,* 336 Ill. App. 134; *Rokicki v. Polish Nat. Alliance of United States,* 314 Ill. App. 380; *Purcell v. Degenhardt,* 202 Ill. App. 611, 615. A good summary appears in *McDermott v. Burke,* 256 Ill. 401, 405.

 This state adheres to the general rule that an invitee who goes to a place other than such as is covered by the invitation, thereby loses that status. *Briney v. Illinois Cent. R. Co.,* 401 Ill. 181; *Ellguth v. Blackstone Hotel, Inc.,* 408 Ill. 343.

 The court's given instructions informed the jury of the rules above stated. Under the instructions, it became a question of fact for the jury to decide whether the invitation was limited to a certain place. Obviously, that decision necessarily rested in part on the credibility of the witnesses. Since the infant plaintiff at least partly corroborated the statements of the defendant, it is clear that the evidence amply supports the verdict.

 The complaint did not charge the defendant with wilful and wanton misconduct. It was based entirely on the theory that defendant owed a duty of due care to the infant plaintiff, as an invitee. In view of the evidence that the child did not have that status, the defendant did not owe a duty of due care, as charged in the complaint, and it was proper to return the verdict of not guilty.

There was an assignment of error as to another instruction, but we deem it too hypercritical to deserve comment.

The remaining question concerns the disposition of the inconsistent verdict in favor of the father. Of course, the father had a separate cause of action, but he chose to try it in the same trial, under a separate

count. Thus he is confronted with the same evidence which was not sufficient to make the defendant liable to the child, as the jury has decided, with the approval of the presiding judge.

■ The applicable rule of law as to the father's suit is thus stated: "The parent's right of action, although distinct from the child's right of action, is based upon and arises out of the negligence which causes the injury to the child. Thus the parent cannot recover unless the child has a good cause of action." 39 Am. Jur., Parent and Child, sec. 74.

■ Upon failure to establish a right of action in the infant plaintiff, the claim of the father must fail with it, and the court properly entered judgment notwithstanding the verdict as to this claim. The judgments are affirmed.

*Judgments affirmed.*

BARDENS, P. J. and CULBERTSON, J., concur.