Donna WADLEY, Individually and as Mother and Personal Representative of the Estate of Seth Wadley, Deceased and Alfred Wadley, Individually and as Father and Personal Representative of the Estate of Seth Wadley, Deceased, Appellants,

v.

INTERNATIONAL TELECOMMUNICATIONS SATELLITE ORGANIZATION, Appellee.

No. 02–7124.

United States Court of Appeals, District of Columbia Circuit.

Dec. 2, 2003.

Patrick Michael Regan, Salvatore Joseph Zambri, Athanasios Basdekis, Regan, Halperin & Long, Washington, DC, for Plaintiffs–Appellants

Christopher E. Hassell, Bonner Kiernan Trebach & Crociata, Washington, DC, for Defendant–Cross–Claimant–Appellee.

Before RANDOLPH and ROBERTS, Circuit Judges, and WILLIAMS, Senior Circuit Judge.

### JUDGMENT

PER CURIAM.

■ This cause was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral arguments of counsel. It is

**ORDERED AND ADJUDGED** that the judgment of the district court dismissing the Wadleys' claims under theories of business host liability and social host liability be affirmed. In *Rong Yao Zhou v. Jennifer Mall Restaurant*, 534 A.2d 1268, 1272 (D.C.1987), the District of Columbia Court of Appeals recognized a cause of action against a tavern owner for negligence in serving alcohol to an intoxicated customer. In doing so, the court emphasized that a local statute specifically regulating tavern owners "supplie[d] the standard of care by which tavern keepers' conduct is to be measured under the common law." *Id.* In the same opinion, the Court of Appeals explicitly declined to address the issue of social host liability. *Id.* at 1278 n. 9. There is no comparable statute that would define the standard of care for business hosts and social hosts; the imposition of liability on such hosts would thus break new ground in the District's tort law. As this court has recognized, "federal courts, sitting in diversity, are obligated to apply, not to amend, existing state law." *Tidler v. Eli Lilly & Co.*, 851 F.2d 418, 426 (D.C.Cir. 1988); *accord Burris Chem., Inc. v. USX Corp.*, 10 F.3d 243, 247 (4th Cir.1993) ("[T]he federal courts sitting in diversity rule upon state law as it exists and do not surmise or suggest its expansion."); *Wolk v. Saks Fifth Ave., Inc.*, 728 F.2d 221, 223 (3d Cir.1984). We are particularly reluctant to adopt business host or social host

liability for the District in this case because the Wadleys could have brought suit in the District's own courts but opted for the federal forum instead. *See Porter v. Nutter*, 913 F.2d 37, 41 (1st Cir.1990); *Shaw v. Republic Drill Corp.*, 810 F.2d 149, 150 (7th Cir.1987). It is further

■ **ORDERED AND ADJUDGED** that the district court's grant of summary judgment to Intelsat on the Wadleys' vicarious liability claim be affirmed. To establish the vicarious liability of Intelsat, the Wadleys must show that a master-servant relationship existed between Intelsat and Ricardo Aspillaga, and that Aspillaga was acting within the scope of his employment when he became intoxicated. *See Moorehead v. District of Columbia*, 747 A.2d 138, 142 (D.C.2000) (citing *Giles v. Shell Oil Corp.*, 487 A.2d 610, 611 (D.C. 1985)); *see also Chastain v. Litton Sys., Inc.*, 694 F.2d 957, 962 (4th Cir.1982) (the "critical time" for the scope-of-employment analysis is the period of the company holiday party). Intelsat concedes that the first element of this test is met; we agree with the district court that the second is not. The undisputed material facts indicate that the party did not serve Intelsat's business interests to the degree necessary to bring Aspillaga's attendance at the party within the scope of his employment.

Intelsat Vice President Tony Trujillo stated in his deposition that no business plans were discussed at the party, and that no business partners, vendors, or consultants were invited. JA 269–70. Moreover, the party was held at the Renaissance Hotel (not at Intelsat's offices) on a Saturday night, and Aspillaga was in no way obligated to attend; the Statement of Work that Intelsat used in its negotiations with the hotel described the party as "an optional black-tie event for staff members and their spouses/guests, Contractors and Temporary Staff." JA 706. The facts of

this case thus differ in crucial respects from those of *Chastain,* in which the party was held on company premises and employees were required to check in by 8:00 a.m. to receive their pay for the day. *Chastain,* 694 F.2d at 959. The Intelsat party did include some brief remarks from the company's chief executive—remarks that the master of ceremonies described as "[c]omments on 1999 and ... some positive words about looking forward to 2000" (JA 704)—but such pleasantries are insufficient to support a finding that Aspillaga was acting within the scope of his employment when he attended the party. With regard to the after-party, the record indicates that it was even further removed from the scope of Aspillaga's employment. Intelsat's e-mailed invitation to the holiday party makes no mention of an after-party (JA 753); furthermore, Trujillo and Intelsat employee Nancy Cowan gave uncontroverted testimony that the alcohol at the after-party was brought by the attendees themselves, and not furnished by Intelsat (JA 254, 502–03).

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. See Fed. R.App. P. 41(b); D.C.Cir. R. 41.